IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT RUSSELL,<br><br>  Plaintiff,<br><br>v.<br><br>FIVE STAR QUALITY CARE, LLC<br>d/b/a The Palms at Lake Spivey,<br><br>  Defendant. | CIVIL ACTION FILE NO.<br>1:22-cv-03452-JPB-LTW |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's Motion to Dismiss or, in the Alternative, Motion to Stay and to Compel Arbitration. [Doc. 13]. For the following reasons, the undersigned **RECOMMENDS** that the Motion [Doc. 13] be **GRANTED** and that this action be **DISMISSED**.

**I.   FACTS**

Plaintiff was hired by Five Star Quality Care, LLC d/b/a The Palms at Lake Spivey ("Five Star" or "the Company") on or about June 17, 2016, to work as a Maintenance Director. [Doc. 1 ¶13]. Five Star's Regional Human Resources Director, Tina L. Nealon, explained that "[a]s a condition of employment, an employee must execute a Mutual Agreement to Resolve Disputes and Arbitrate Claims ('Arbitration

Agreement') at the beginning of his or her employment with the Company, which memorializes an employee's agreement to exclusively resolve all claims encompassed by the Arbitration Agreement pursuant to the Arbitration Agreement." [Doc. 13-2 ¶5]. Nealon further explained that a "potential employee's employment application will be considered withdrawn from the Company if he or she decides not to agree to the terms of the Arbitration Agreement." [Id. ¶6].

> The Arbitration Agreement itself states:
>
> As a condition of your employment with Five Star, you are required to agree to participate in Five Star's dispute resolution and arbitration program which is described in detail in the attached Mutual Agreement to Resolve Disputes and Arbitrate Claims (the "Agreement"). Because participation in the dispute resolution and arbitration process is one of the conditions of your employment with Five Star, if you decide not to agree to the terms of the Agreement, Five Star will consider your employment application to be withdrawn.
>
> The attached Agreement describes this important program in detail, including:
>
> • Your and Five Star's agreement to attempt to resolve grievances through an informal grievance and dispute resolution process;
>
> • Your and Five Star's agreement to use binding arbitration, instead of court action or jury trials, to resolve disputes if the grievance is not satisfactorily.

[Doc. 13-2 at 6].

The first page of the Arbitration Agreement states: "You should take the time to carefully review this important document before you sign it. You also

have the right to ask a lawyer about the effect and meaning of the Agreement."

[Id.].

Section I of the Arbitration Agreement, titled "Requirement to Grieve and Arbitrate," states that:

> For purposes of this Agreement, the term "claims" means any and all disputes, claims or controversies arising out of your employment or the termination of your employment which could be brought in a court, including, but not limited to, claims under the Age Discrimination in Employment Act; Title VII of the Civil Rights Act of 1964; the Fair Labor Standards Act; **the Family and Medical Leave Act; the Americans with Disabilities Act of 1990**; Section 1981 through 1988 of Title 42 of the United States Code; state and local anti-discrimination laws; and any other federal, state, or local law, ordinance or regulation, and claims based on any public policy, contract, tort, or common law and any claim for costs, fees, and other expenses or relief, including attorney's fees.

[Doc. 13-2 at 7] (emphasis added).

Plaintiff received, signed, and returned the Arbitration Agreement on June 17, 2016. [Doc. 13-2 at 15]. Plaintiff also received, signed, and returned a receipt and acknowledgement form on the same date, acknowledging "receipt of the Mutual Agreement to Resolve Disputes and Arbitrate Claims." [Id. at 17]. Pursuant to standard onboarding and document maintenance practices of Five Star in the normal course of their business, Defendant placed and maintained Plaintiff's Arbitration Agreement signature page in his personnel file. [Doc. 13-2 ¶¶7–10].

On October 15, 2020, Plaintiff, after a death in his family, requested a leave of absence under the Family and Medical Leave Act ("FMLA"). [Doc. 1 ¶16]. On November 11, 2020, Plaintiff was diagnosed with major depressive disorder and anxiety, and was given a treatment plan for four weeks. [Id. ¶17]. Plaintiff's physician requested a return-to-work date of January 4, 2021. [Id.]. Plaintiff subsequently provided his doctor's note to Defendant, informing it of his treatment plan and advising it of his diagnoses. [Id. ¶19]. Plaintiff requested FMLA leave to complete the treatment plan. [Id.]. This request was approved by Nat Watkins, Defendant's Executive Director. [Id. ¶21].

As requested by Defendant, Plaintiff "continued to communicate with the Defendant and sent them documents from his doctor updating them on his leave." [Id. ¶22]. However, on or about November 27, 2020, Plaintiff received a letter from Nat Watkins and Defendant's Business Office Manager, Janet Lynch, stating that he had resigned his employment because his short-term leave of absence was exhausted on November 26, 2020. [Id. ¶23].

Plaintiff contends that he did not resign, but rather was terminated by Defendant. [Id. ¶24]. Specifically, Plaintiff alleges that Defendant terminated his employment because of his disability, perceived disability, or record of having a disability and his requests for accommodation. [Id. ¶¶45–46]. As a result, Plaintiff claims Defendant

discriminated and retaliated against him and failed to accommodate him in violation of the Americans with Disabilities Act ("ADA"), as amended. [Id. ¶¶69, 74]. Additionally, Plaintiff alleges Defendant retaliated against him and interfered with his rights in violation of the FMLA. [Id. ¶95].

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") was enacted "to reverse the longstanding judicial hostility towards arbitration" and "to place arbitration agreements on the same footing as other contracts." EEOC v. Waffle House, Inc., 534 U.S. 279, 290 (2002). The FAA has been recognized as "a congressional declaration of a liberal federal policy favoring arbitration agreements." Davis v. S. Energy Homes, Inc., 305 F. 3d 1268, 1272 (11th Cir. 2002) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Section 2 of the FAA provides that a "written [arbitration] provision in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Where the parties have agreed to arbitrate their dispute, the job of the courts—indeed, the obligation—is to enforce that agreement." JPay, Inc. v. Kobel, 904 F.3d 923, 929 (11th Cir. 2018) (citation omitted). In addition, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of

arbitration[.]" Moses H. Cone Mem'l Hosp., 460 U.S. at 24-25.

Under the FAA, a party seeking to compel arbitration must show: (1) the existence of an arbitration agreement; (2) that the claims raised fall within the scope of that agreement; and (3) that the non-moving party has failed to or refuses to arbitrate the claims. See Akpele v. Pacific Life Ins. Co., 646 F. App'x 908, 912 (11th Cir. 2016). Defendant argues that all three elements are satisfied. [Doc. 13-1].

### III. LEGAL ANALYSIS

Defendant contends Plaintiff entered into a valid and binding arbitration agreement with respect to all claims related to Plaintiff's employment. [Doc. 13-1 at 13]. Thus, Defendant moves to compel Plaintiff to submit his claims to arbitration and asks the Court to dismiss or stay this case until the resolution of the arbitration pursuant to the FAA. [Doc. 13-1 at 1].

"Plaintiff does not dispute he signed, understood, and voluntarily agreed to the terms of the Arbitration Agreement for adequate consideration forming a valid and enforceable contract," nor does Plaintiff "dispute whether his claims are arbitrable." [Doc. 15 at 2]. Instead, Plaintiff claims that the Arbitration Agreement in dispute is not covered by the FAA. [Doc. 14 at 2]. Specifically, Plaintiff argues that Supreme Court precedent, as it relates to the interpretation of the phrase "interstate commerce," should be reconsidered. [Id. at 4].

### A. The Arbitration Agreement is Covered by the FAA

The FAA states that:

> A written provision in any maritime transaction or a contract evidencing a transaction **involving commerce** to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4.

9 U. S. C. §2 (emphasis added).

Plaintiff correctly states that the "phrase 'involving commerce' has been interpreted by the Supreme Court to mean that 'Section 2, therefore, embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce.'" [Doc. 14 at 3] (quoting Perry v. Thomas, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987)).

However, Plaintiff contends that the Arbitration Agreement in dispute does not "evidence interstate commerce." [Doc. 15 at 2]. To this, Defendant responds first by citing the Arbitration Agreement itself, which states, in relevant part:

> **Federal Arbitration Act.** The Parties acknowledge and agree that the Company is involved in transactions involving interstate commerce and that the Federal Arbitration Act shall govern any arbitration pursuant to this Agreement, including but not limited to the Agreement's scope, interpretation and application.

[Doc. 13-2 at 11] (emphasis in original).

By signing the agreement, Defendant argues, Plaintiff "specifically acknowledged that Five Star is involved in interstate commerce." [Doc. 15 at 4]. Defendant also argues, the provision cited above makes it "clear the Parties intended arbitration to be governed by the FAA." [Id.].

Still, Plaintiff asserts that there is "nothing in the record that would support a determination that this contract evidences a transaction involving commerce." [Doc. 14 at 3-4]. As proof that the Arbitration Agreement does not evidence interstate commerce, Plaintiff points to the fact that the contract contemplates Plaintiff, a Georgia resident, being employed in Georgia. [Doc. 14 at 3]. Defendant argues this assertion is "misleading," because the very website cited by Plaintiff "also references the Company's operations across state lines in at least twenty-seven other states." [Doc. 15 at 4]. Defendant also points out that the Company is a "Maryland corporation with a principal office in Massachusetts—not Georgia." [Doc. 15 at 5].

Regardless, Defendant correctly explains that "to determine whether an agreement to arbitrate claims arising out of the employment relationship is 'a contract evidencing a transaction involving commerce,' the Court must interpret the FAA's language broadly." [Doc. 15 at 5] (quoting Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 57 (2003)). Defendant goes on to correctly explain, "The United States Supreme Court has instructed courts to interpret the term 'involving commerce' as the

8

'functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.'" [Doc. 15 at 5] (quoting Citizens Bank, 539 U.S. at 56). Accordingly, a transaction may affect commerce "if in the aggregate the economic activity in question would represent a general practice. . . subject to federal control." Citizens Bank, 539 U.S. at 56–57.

"Adhering to this interpretation of the FAA," Defendant argues, "courts focus generally on the nature of the employer's business and have repeatedly held that employment agreements involve interstate commerce when the defendant employer— including those involved in senior living, as here— is a corporation doing business in multiple states." [Doc 15 at 5–6]; see also Potapowicz v. Gregerson Mgmt. Servs., No. 4:16-CV-01999-SGC, 2017 WL 3458977, at *2 (N.D. Ala. Aug. 11, 2017) (finding the FAA governed an arbitration agreement where defendant operated business locations throughout multiple states); Maddox v. United States Healthcare-Adams, LLC, 350 F. Supp. 2d 968, 974 (M.D. Ala. 2004) (holding that "if an organization engages in business across state lines [or] has any portion of its assets generated as a result of any activity across state lines. . . then FAA jurisdiction is the appropriate mechanism for settling a dispute where a valid arbitration agreement has been executed").

In sum, not only does the agreement in dispute explicitly state that "the Company is involved in transactions involving interstate commerce and that the Federal Arbitration Act shall govern any arbitration pursuant to this Agreement," but the nature of the Defendant company's business also supports the conclusion that the agreement in dispute does evidence interstate commerce. [Doc. 13-2 at 11]. Importantly, where, as here, an agreement between the parties indicates arbitration would be governed by the FAA, this Court has enforced the intentions of the parties and compelled arbitration. See Smith v. Sanders Realty Holdings, LLC, No. 120-CV-03617-ELR-CMS, 2021 WL 2651816, at *3 (N.D. Ga. Jan. 15, 2021), report and recommendation adopted, No. 1:20-CV-03617-ELR, 2021 WL 2651817 (N.D. Ga. Apr. 19, 2021). As such, this Court will enforce the parties' intentions, which were for the Arbitration Agreement to be covered by the FAA.

### B.  This Court Will Not Reconsider Prior Precedent

Plaintiff argues prior precedent interpreting the phrase "interstate commerce" should be "reconsidered." [Doc. 14 at 4]. In support, Plaintiff cites New Prime Inc. v. Oliveira, 139 S. Ct. 532, 539 (2019). [Doc. 14 at 5–6]. In that case, the Supreme Court dealt with an interpretation issue of the phrase "contracts of employment," in Section 1 of the FAA, and held that the phrase "must be interpreted in a manner that [it was] understood when the FAA was passed." [Id. at 5]. Plaintiff contends this decision

"impliedly overturned more contemporary interpretations of the breadth of the FAA." [Id. at 7].

To start, Oliveira is distinguishable because it dealt with the interpretation of the phrase "contracts of employment" in Section 1 of the FAA, not the phrase "involving commerce" in Section 2 of the FAA, as Defendant notes. [Doc. 15 at 8]. But more importantly, Plaintiff offers no support for his proposition that Oliveira has changed the "breadth of the FAA" in any way. Instead, as Defendant points out, cases decided after Oliveira "continue to support a broad interpretation of the phrase 'involving commerce' under Section 2 of the FAA indicating 'congressional intent to regulate the outer limits of authority under the Commerce Clause.'" Sw. Airlines Co. v. Saxon, 142 S. Ct. 1783, 1789 (2022) (broadly interpreting the FAA); see also Viking River Cruises, Inc. v. Moriana, 142 S. Ct. 1906 (2022).

Plaintiff "recognizes that Supreme Court and Eleventh Circuit precedent holds that the scope of the FAA is as broad as the current interpretation of the Commerce Clause," thus admitting that Plaintiff's argument regarding the interpretation of the phrase "interstate commerce," is at odds with current law. Therefore, it stands to reason that this Court cannot "reconsider" Supreme Court precedent as proposed by Plaintiff.

## IV.   CONCLUSION

Based on the foregoing reasons and cited authority, it is **RECOMMENDED**

that Defendant's Motion to Dismiss or, in the Alternative, Motion to Stay and to Compel Arbitration [Doc. 13] be **GRANTED**. The Court also **RECOMMENDS** that the parties be **ORDERED** to submit Plaintiff's claims to arbitration and that this action be **DISMISSED**.[1]  As this is a final Report and Recommendation and no other matters are pending before this Court, the Clerk is **DIRECTED** to terminate the reference to the undersigned.

**SO REPORTED AND RECOMMENDED**, this 26 day of January, 2023.

_____
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

[1] Dismissal, rather than a stay, is appropriate since all claims are subject to arbitration.  See Cruz v. Cingular Wireless, LLC, 648 F.3d 1205, 1216 (11th Cir. 2011) (affirming the district court's order dismissing the plaintiffs' complaint and compelling arbitration of the plaintiffs' claims); Albertson v. Art Institute of Atlanta, No. 1:16-CV-3922-WSD-RGV, 2017 WL 9474223, at *9 (N.D. Ga. Mar. 23, 2017) (recommending that defendants' motion to compel arbitration be granted and the action be dismissed), report and recommendation adopted, No. 1:16-CV-3922-WSD, 2017 WL 1361293 (N.D. Ga. Apr. 14, 2017).